FILED ✓
RECEIVED ___   LODGED ___   COPY ___

MAR 2 9 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ M DEPUTY

Name:              **George M. Walker**
                   **Diane W. Walker H/W**
Address:           3964 E. Expedition Way
City, State, Zip:  Phoenix, Arizona 85050
Daytime Phone:     480.227.3100
*Representing Self, Without a Lawyer*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| George M. Walker<br>Diane W. Walker        H/W<br>3964 E. Expedition Way<br>Phoenix, Arizona 85050<br>        Plaintiffs<br><br>vs<br><br>Washington Mutual Bank, F.A.<br>2273 N. Green Valley parkway<br>Suite 14<br>Henderson, NV 89014<br><br>JP MORGAN CHASE BANK N.A.<br>AKA CHASE HOME FINANCE<br>7301 Baymeadows Way<br>Jacksonville, FL 32256<br><br>CALIFORNIA RECONVEYANCE COMPANY<br>9301 Corbin Ave<br>Northridge, CA 91324<br><br>SECURITY TITLE AGENCY<br>8800 E. Raintree Dr. Suite 120<br>Scotsdale, AZ 85260<br><br>        Defendants | **CIV '11 0584 PHX SRB**<br><br>CASE NO: _____<br><br><br>THIS DOCUMENT IS **NOT** IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.<br>REFERENCE _7.1(6)(1)_<br>(Rule Number/Section)<br><br><br>**TRIAL-BY-JURY REQUESTED** |

## PLAINTIFFS' COMPLAINT FOR QUIET TITLE

COME NOW the Plaintiffs George M. and Diane W. Walker, husband and wife, with this their First Complaint For Quiet Title, complaining for declaratory judgment in respect of the same, and demanding damages arising from fraud and slander of title inflicted by Defendants -- all relating to the Plaintiff's real estate (hereinafter referred to as "Property") located at:  3964 E.

Expedition Way, Phoenix, Arizona 85050.

Plaintiffs reserve their right to amend and to assert derivative claims under Arizona Civil Rights and Consumer Protection Statutes, as well as state laws prohibiting Deceptive Trade Practices, among others.

Plaintiffs are filing this suit pursuant to common law rights to limit collection and enforcement to "holders in due course" and other privileges inherent in the common law doctrine of "privity of contract."

Plaintiffs reserve the right to amend and add additional causes of action to this complaint by regular amendment pursuant to Rule 15 of the Arizona Court Rules of Civil Procedure as may be necessary to bring all issues before the Court concerning the properties for which quiet title is sought.

## FACTS

Plaintiffs George M. Walker and Diane W. Walker, husband and wife, are the owners of Property and have title to it.

Plaintiffs received a "Notice of Trustee's Sale" with all Defendants' names on it. (Exhibit 2)

The property was previously scheduled for sale on March 1, 2011.

The March 1, 2011 property sale was postponed on February 28, 2011 and is now currently scheduled for sale on April 1, 2011. (Exhibit 3)

It is not clear to Plaintiffs who is the foreclosing party.

Defendant JP MORGAN CHASE BANK, N.A. (hereinafter referred to as "CHASE") is named as primary Defendant because it considers itself to be the "successor in interest to Washington Mutual Bank" (hereinafter referred to as "WAMU") which is the alleged original Lender under the Promissory Note and Deed of Trust related to the subject Property.

Plaintiffs are not in the possession of any documents that would prove that CHASE is the "successor in interest" to WAMU -- with regard to the Property in question.

Plaintiffs are not in the possession of any documents that would prove that CHASE is in possession of the subject Promissory Note and Deed of Trust.

WAMU is liquidated.  No valid debt exists.

There is no proof that CHASE acquired the Promissory Note for value, and in good faith.

There is no proof that CHASE paid WAMU the value of the Promissory Note in full.

There is no admissible evidence to prove the existence of a valuable consideration between

WAMU and CHASE regarding the subject promissory Note.

The Federal Deposit Insurance Corporation (FDIC) seized WAMU's operations on September 25, 2008, and immediately sold the troubled bank's deposits and some branches to JP Morgan Chase.

In March 2009, WAMU filed a lawsuit against the FDIC for allegedly violating the company's rights by hosting the fire sale to JP Morgan Chase.

WAMU claimed that the fire sale to CHASE violated its rights, arguing that a more orderly liquidation would have provided greater value to the company's constituents. http://www.bloggingstocks.com/2009/03/22/washington-mutual-sues-fdic-over-fire-sale/

Apparently, CHASE only paid for and acquired the cash deposits of WAMU.

There is no indication that WAMU's debt was sold to CHASE.

There is no indication that the Promissory Note subject to this lawsuit was endorsed from WAMU to CHASE, or was transferred to CHASE.

### *Identity of Trustee?*

CALIFORNIA RECONVEYANCE COMPANY (hereinafter referred to as "CRC") is listed as "Trustee" pursuant to the Deed of Trust (hereinafter referred to as "Deed") recorded on October 11, 2006 in the Maricopa County Recorder (instrument ID# 20061344642).

SECURITY TITLE AGENCY (hereinafter referred to as "STA") could be the party initiating foreclosure by having its name stamped on both the "Notice of Trustee's Sale" (Exhibit 2) and the Deed.

Plaintiffs are not in the possession of any documents which would prove under what capacity STA is acting, and to prove how STA acquired any rights to pursue foreclosure in this particular case.

Plaintiffs are not in the possession of any document to prove that any of the Defendants is a Note Holder or in possession of the ORIGINAL Note.

Defendants CHASE and STA are not in privity with any contract or note to which the Plaintiffs were a party.

There is no evidence on record as to why STA has its name stamped on the Deed and Notice of Trustee's Sale.

There is no evidence on record as to how STA became involved in subject property, and under what capacity.

Plaintiffs are not aware of any real or reasonable Declaration of Trust or other valid grant by which STA was placed as trustee.


# ARGUMENT

A judicial determination is appropriate to determine the Plaintiffs' rights with regards to the property.

A declaration of rights and duties of the parties by the court is necessary to determine the actual status and validity of the loan and any rights, duties, and/or obligations to be enforced.

Plaintiffs are informed and believe that they alleged grounds for cancellation of the mortgage documents and deed of trust for cause as stated herein and specifically as the character and relationship of the parties, the existence of the ground for recovery, including fraud, false representations, or impossibility of performance, defendants' failure to perform, and the inadequacy of a remedy at law.

**FIRST CAUSE OF ACTION:**              **Injunctive Relief pursuant to A.R.S. §12-1801**

Plaintiffs hereby move the Court to cancel, stay, or halt Defendants' wrongful sale of Plaintiffs' Property, currently scheduled for April 1, 2011.

Plaintiffs presume that the foreclosing party is either STA or CHASE.

Plaintiffs submitted "Qualified Written Request" (Exhibit 1) to Defendants CRC and CHASE. So far, no responses were received.

Until such time as any of the foreclosing Defendants can provide to the Plaintiffs a detailed analysis of the amounts they contend are due and owing on the Note and Deed at issue, and provide a breakdown of the amounts due and owing on the Note and Deed, Plaintiffs request the entry of an injunction to enjoin Defendants' action pursuant to A.R.S. §12-1801 and pursuant to the principles of equity.

Plaintiffs will be irreparably injured if the parties are not enjoined, in that they will suffer complete loss of their unique real property, which is not capable of being duplicated.

Plaintiffs will lose their right of possession, the right to live in their property (including the right of quiet enjoyment),

With the possible loss of their home, Plaintiffs would suffer great personal injury by being uprooted from their community, the infliction of emotional distress upon Plaintiffs who are already under duress and other damages personal to Plaintiffs -- including defamation of their credit.

Any potential harm to Defendants is slight when compared to the damage to be suffered by Plaintiffs and the equities balance and tip heavily in favor of Plaintiffs.

Plaintiffs have no other adequate remedy at law.

Plaintiffs seek entry of a preliminary injunction on a ex parte basis without notice to the named Defendants in that, were the defendants given advance notice of these proceedings they would in all likelihood seek to accelerate the damage

Plaintiffs have a good likelihood of prevailing on the merits of claim due to the nature and extent of Defendants' violations.

Plaintiffs request that the restraining Order be issued without bond as Plaintiffs are unable to afford a bond of any kind or type.

Plaintiffs will suffer extreme hardship in the absence of stay.

Defendants will not be irreparably injured by the issuance of a stay given the obscene profits defendants already have made.

**SECOND CAUSE OF ACTION:   Relief by Foreclosure Accounting**

Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if the same were fully recopied and restated herein below.

A controversy exists between Plaintiffs and Defendants with respect to the correct amount of money that is actually owed by Plaintiffs to Defendants (if any).

Defendants have not responded to Plaintiffs' Exhibit 1 and have refused to provide an accurate accounting of the Note.

Plaintiffs demand that a Plaintiffs' representatives be allowed to audit Defendants' books and records as they relate to accounting of the transfers and sales of the Note and Deed at issue, to find out if or how these somehow lead to Defendant STA or CHASE.

Plaintiffs allege that accounting should include a submission of the Original Note that the foreclosing Defendant(s) should possess as "holders in due course" to a forensic analysis and full actuarial statement regarding EACH transaction relating to the ownership, interest, and securitization of the note (if any securitization has taken place).

Plaintiffs contest that without the privity of contract or original note the sum will forever and indefinitely be disputed because without said note Plaintiffs believe that the Defendants have no right to collections of any kind.

As a result, the correct amount of money due and owing from Plaintiffs to Defendants, if any, remains in dispute and cannot be determined without an accounting and a submission of

evidence.

Therefore, Plaintiffs require that Defendants make available their books and records (only as they relate to Plaintiffs alleged loans) in order that Plaintiffs may have a qualified representative audit the books, records, federal reserve collateral and borrower in custody agreements to determine the accounting of the financial transaction(s) made regarding the note.

**THIRD CAUSE OF ACTION:**      **Unfair Debt Collection Practices & Predatory Lending**

Plaintiffs reallege the previous paragraphs and incorporate all material allegations and legal contentions of the same as if fully set forth and recopied herein.

Plaintiffs are informed and believe and thereupon allege that the Defendants and each of them, in taking the actions aforementioned, have violated provisions of A.R.S. §32-1055(D)(3) by failing to keep a record of monies collected and the remittance of these monies.

Defendants' failure to do so is proven by their failure to provide any such evidence to Plaintiffs prior to this litigation -- by failing to respond to plaintiffs' Exhibit 1 requests.

Defendants should be penalized pursuant to A.R.S. §32-1056.

Defendants also violated the Federal Fair Debt Collections Act and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617.

The court should declare that laches applies to bar the alleged debt collector, or, since the trustee failed to comply with the Fair Debt Collection Practices Act in order to proceed to trustee sale of the property, the trustee is equitably estopped from taking any further action against the subject property.

There is no uniformly accepted definition of "predatory lending."

However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower.

Since predatory lenders are constantly developing new techniques to take advantage of borrowers, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include engaging in aggressive, high pressure and/or
misleading tactics.

Defendants, WAMU and CRC, engaged in this kind of conduct toward the Plaintiffs.

Defendants WAMU and CHASE are directly or through agents or employees entities or persons actively involved in the extension of credit as said term is defined under the Truth in Lending Statute (TILA).

By failing to respond to Plaintiffs' Exhibit 1, said Defendants subject to the requirements of the Truth in Lending Act have violated the requirements of the said act in that among other things:

    a. They have failed to validate and otherwise make a full accounting and required disclosures as to the true finance charges and fees.

    b. They have improperly retained funds belonging to Plaintiff in amounts to be determined.

    c. To disclose the status of the ownership of said loans.

Plaintiffs further allege that these violations are such as to require rescission and or cancellation of the loan herein and return of all funds received by Defendants from Plaintiffs.

Plaintiffs alleges that Defendants and each of them are such as to fall within the requirements of the Real Estate Settlement Procedures Act (RESPA), and placed loans for the purpose of unlawfully increasing and otherwise obtaining yield spread fees, excess charges and amounts in excess of what would have been lawfully earned.

In addition to the requirements of RESPA, Lenders acted either individually or jointly as "Servicers" as that term is used within the act and either individually or jointly violated the requirements of 26 USCA § 2605(b) in that the servicing contract or duties there under were transferred or hypothecated without required notice.

Plaintiffs allege that these violations are such as to require rescission and/or cancellation of the loan herein on and return of all funds received by Defendants from Plaintiffs.

Plaintiffs further allege that they are entitled to compensatory damages and an amount to be determined at trial.

**FOURTH CAUSE OF ACTION:   Declaratory Judgment: No Valid Contract Exists**

Plaintiffs reallege the above and foregoing paragraphs of this Complaint and incorporates the same by reference as if fully copied and restated herein below.

Under Arizona law, as defined both by common law judicial precedent and statute, a contract requires a promise which is bargained for as consideration if, but the contract will only be valid if, the promised performance would be consideration.

The October 2, 2006, Deed of Trust (Maricopa County Recorder ID# 20061344642)

is unenforceable and void as there are NO PROMISES constituting consideration made or intended by WAMU.

The alleged Lender WAMU (somehow the mysteriously disconnected predecessor in interest to

Defendant CHASE) did not even promise to lend money, or recite that it had ever delivered money to the Plaintiffs.

A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice or alternative performances.

Words of promise which by their terms make performance entirely optional with the promisor do not constitute a promise.

Where the apparent assurance of performance is illusory, it is not consideration for the return promise.

WAMU did not promise anything to the Plaintiffs.

Accordingly, even if there IS privity of contract between WAMU, CHASE, and the Plaintiffs, which the Plaintiffs categorically deny, based on the evidence, there is no enforceable contract because there were no BARGAINED FOR consideration or detrimental promises which would constitute the same.

In vain the Court may search the evidence for any promise made on behalf of WAMU which would constitute consideration TO as opposed to FROM the Plaintiffs.

A promise which is bargained for is consideration if, but only if, the promised performance would be consideration.

Plaintiffs further allege that the Plaintiffs' obligation to WAMU (and/or CHASE) constituted and was treated as an asset to the bank. The obligation provided only detriment from the Plaintiffs but incurring no detriment on the bank's part.

Therefore, there is valid consideration within the meaning of binding Arizona precedent.

A contract concerning real property is not binding on either party unless its obligations are mutual and reciprocal.

An unenforceable contract as between the two original parties transfers no right to title or interest in said property.

The Note and Deed at issue here lacked bilateral detriment and mutuality and are therefore unenforceable by Defendants.

Where one party elicits promises from another but neither promises nor undertakes any action detrimental to itself, that party has not "contracted" with the other.

Defendant WAMU (and CHASE) neither promised nor did transfer its own money to the Plaintiffs.

In the definitions and on page 3 of the Deed, it is recited that "BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record."

On page 2, item (G) of the same Deed, the term "loan" is defined as "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security instrument, plus interest."

Nowhere is it affirmed or explained that the loan proceeds come from the "Lender."

Indeed it is specifically stated (again on page 2, this time in item (E)) that "The Note states that Borrower owes Lender ONE MILLION FOUR HUNDRED FORTY THOUSAND AND 00/100 Dollars, plus interest." Nowhere does "THE DEED OF TRUST" state that WAMU, or that WAMU or any other Defendant was the lawful owner of the money delivered to the Plaintiffs, nor even that the money was advanced from any assets or capital funds actually owned by the bank, or was due to any "Draw" against the credit of WAMU.

There is no indication of Detrimental Action Promised or Undertaken by WAMU or any of its alleged successors in interest --- such as CHASE.

There is no evidence on record to prove that CHASE is entitled under Arizona Law to "Holder in Due Course" status.

There is no evidence on record to prove that STA is a trustee.

Plaintiffs allege that CHASE and STA will not be able to show any valid interest in the subject Property.

Plaintiffs ask this Court to declare that Defendants' foreclosure attempt is nothing but a fraudulent disguise aimed to defraud the consumer, the Plaintiffs, and fraudulently convert title to property.

Plaintiffs allege that Defendants provided nothing of any value to the Plaintiffs.

Defendants cannot show that they promised to transfer or did in fact transfer anything actually belonging to or possessed by CHASE or STA to the Plaintiffs.

Wherefore, no valid encumbrance was created by the Deed -- despite the existence of a written instrument and any apparent affirmation of contract which may facially appear in that instrument.

In short, the "loan" document does not indicate or even substantially suggest that WAMU, and subsequently Defendant CHASE, ever actually took (or promised to take) any action detrimental to itself.

The sole purpose of the written instrument entitled "Deed of Trust" was to confirm and specify

that the Plaintiffs had given up things of value, to their own detriment, and would be required to give up more things of value, while WAMU promised nothing, provided nothing, and promised only to collect the money which the "borrowers" were required to admit they owed, without any factual recitations regarding actual delivery or receipt of funds.

Plaintiffs thus allege that WAMU in fact did nothing (except to collect payments) and CHASE fraudulently holds itself out as a successor in interest, and STA as trustee, but in fact is simply seeking pure profit (with no real legal title or standing, nor any equitable investment or commitment to the transaction).

Plaintiffs allege that this is standard mortgage finance industry practice.

The fact that Defendants' conduct in this case is common practice does not mean that common practice satisfies the Arizona common or statutory law of contractual viability.   The consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise.

Plaintiffs allege that all those who unquestioningly process these loan-foreclosures knowingly and intentionally participate in a fraud which

results in the taking of property without due process of law and in violation of equal protection in the rights to make, enforce, and enjoy all benefits of contractual relationships in the acquisition and maintenance of ownership of property.

A mortgage is originated after a broker or "originating institution" receives a series of promises from a "borrower"; these promises take the form of a mortgage contract and a negotiable instrument known as a "promissory note."

The originator typically neither promises nor undertakes any action detrimental to itself, while soliciting and receiving a large number of promises and actions detrimental to the note grantor or borrower.

Wherefore and accordingly, Plaintiffs move this Court to declare that the Contract (Note and Deed) between the Plaintiffs and WAMU was unsupported by any detrimental promises or performance on behalf of either WAMU or now CHASE.

Wherefore and accordingly, Plaintiffs move this Court to declare that none of the Defendants is the holder in due course of the Plaintiffs' Note and had no right title or interest in the enforcement or collection of that note.

Wherefore and accordingly, Plaintiffs move this Court to declare and adjudge that no valid contract exists or ever existed between the Plaintiffs and WAMU or any of the Defendants,  and that quiet title should now be awarded to Plaintiffs accordingly.


**FIFTH CAUSE OF ACTION: WAMU and CHASE knew or should have known**

Plaintiffs reallege the previous paragraphs of this Complaint and incorporates the same by reference as if the same were fully copied and restated herein below.

Plaintiffs allege that Defendants could not possibly have acted in good faith within the meaning of Arizona Statutory or Common Law, because the contractual terms recited even in the Deed, are so one-sided and devoid of any obligation to perform any act on the part of any Defendant.

Real estate professionals knew or should have known that they were in fact participating in and facilitating a fraud.

Plaintiffs allege that the Defendants engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of this State to foreclose on properties when they do not, in fact, have the right to do so, knowing the property owners affected do not have the knowledge and means to contest the right of said Defendants to do so.

Arizona law does not afford any legal immunity or protection to fraudulent devices in mortgage finance.

This Court should protect fundamental and procedural rights of the people to due process protection of law in conformity with the law and constitutions of both the State and the Federal Governments.

It is a custom, practice, and policy of the Arizona Courts to permit suits which constitute both unconstitutional deprivations of property without due process of law and also impairments on the obligations of contract.

**SIXTH CAUSE OF ACTION:**     **Defendants Lack Standing to Foreclose.**

The obligation to produce the original note and contract has always been a key requirement of the common law of contracts, and this requirement is enshrined by statute in A.R.S. §47-3302.

The Court, on its own initiative, should inquire into the standing of Defendants seeking to foreclose.

Standing must be established before a foreclosure can take place.

The party seeking to foreclose must prove its standing and entitlement to foreclose.

Only the person who is the holder in due course of the note has standing to enforce the note.

For the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument.[1]

---

[1]    *See* UCC §1-201 (20) and comments.

Since there is no evidence that any of the Defendants hold the note, then they do not have standing to pursue any action arising from the mortgage obligation.

Plaintiffs are not in the possession of any documents that would prove that any of the Defendants is a holder in due course.

Arizona Law does require from Defendant(s) to prove that they are entitled to enforce the Note and Deed of Trust.

Pursuant to §47-3301, the person entitled to enforce the instrument means the holder of the instrument.

There is no evidence that any of the Defendants is the holder of the instrument.

They all fail to meet the criteria of a holder in due course as outlined under §47-3302.

It would be required for each of the Defendants to provide straightforward answers as to (1) which Defendant, if any, is entitled to foreclose and to present any admissible evidence that would support the assertion; and (2) to provide the documents which demonstrate the uninterrupted ownership of the subject Notes and Deeds of Trust from closing until today.

Pursuant to § 47-3203(A), "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Pursuant to § 47-3203(B),"Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument."

There is no evidence on the record as to who should be in possession of the instrument in order to have "the right to enforce the instrument."

Defendants not only should be "in possession" of the instrument pursuant to §47-1201(20)(a), they should also be in possession of a "genuine" instrument (free of forgery or counterfeiting) pursuant to §47-1201(18).

Plaintiffs are not aware that any of the Defendants meets the criteria outlined herein pursuant to Arizona law. Therefore, Defendants lack any legitimacy to foreclose, and the foreclosure sale should be suspended.

## SEVENTH CAUSE OF ACTION: Defendants Did Commit Fraud

Consumer fraud, as defined by A.R.S. §44-1521 et seq. is any deception, false statement, false pretense, false promise or misrepresentation made by a seller or advertiser of merchandise. In addition, concealment, suppression or failure to disclose a material fact may be consumer fraud if it is done with the intent that others rely on such concealment, suppression or nondisclosure. Merchandise may include any objects, wares, goods, commodities, intangibles, real estate or services.

The Arizona Attorney General has the authority to bring actions alleging violations of the Consumer Fraud Act, but a private citizen can also do the same.

Plaintiffs believe that they have been the victims of consumer fraud.  They did contact some of the Defendants, CHASE and CRC, prior to this lawsuit (Exhibit 1).

Neither CHASE nor CRC had responded or verified the alleged debt.

Plaintiffs did not notice that STA might be acting fraudulently until they begun preparing for this lawsuit and found STA's name stamped on some documents.

Plaintiffs were forced to file this lawsuit to protect against the attempted fraudulent conversion of their property.

Pursuant to §44-1521, "Advertisement" includes the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise.  "Merchandise" means any objects, wares, goods, commodities, intangibles, real estate, or services. "Sale" means any sale, offer for sale, or attempt to sell any merchandise for any consideration.

Defendant(s) did violate §44-1522(A) by through fraud and misrepresentation of material facts -- and made Plaintiffs rely upon the fraud and misrepresentation.

Furthermore, there is no indication on the record that Defendant(s) paid "any consideration" that is proven to be valid.

Through this action, Plaintiffs seek to prevent the attempted unlawful conversion to the title of their property through foreclosure and to restore to them any monies taken under false pretenses.

### *WAMU and CHASE's Fraud: lack of consideration*

 The loans were granted based on fraudulent and false information.

#### *a.    The Bank did not Take the Note for a Lawful Consideration*
*The Dictionary of Banking Terms* explains consideration as the "lending of money" in exchange for a borrower's promise to repay the loan.  Federal Reserve Bank publications admit that a bank uses the Note signed by the borrower as a deposit.  According to "Modern Money Mechanics" by the Federal Reserve Bank of Chicago, "***banks can build up deposits by increasing loans** and investments . . .*"

Therefore, the Note is used as the value to fund the loan.

The Bank used the Promissory Note as a deposit in the amount listed on the Note, took the deposit for itself, and then gave out a "loan" while not paying one cent of its own money, and while not putting any of its pre-existing assets at risk.

The bank conducted such a transaction and made the deposit without full disclosure and without the borrower's knowledge.

If the Note funded the loan, then the loan could never be the consideration loaned because the bank owned the Note without loaning one cent of its own money.
The bank received the signed promise to repay as an asset for free. Instead of the bank lending its money or other assets, as most customers believe from the face of the Note, the bank created funds for customer's transaction account without customer's permission, authorization, or knowledge and delivered the credit on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer money.

Usually an agreement for a loan is intended and advertised under the concept that the bank would be loaning the money.

That is not what happened.

The meaning of the agreement has been totally altered – it is the borrower that funds the loan. Clearly, the Bank violated contract law and acted in an unauthorized manner, transferring the $1,584,000 to itself for free and returning it back as a "loan."

This is called a fraudulent conversion.

Plaintiffs are not in the possession of any document to prove that the Bank provided a valuable consideration from its pre-existing assets.

A contract cannot be valid where there is no valuable consideration.

If the Bank used the borrowers' signature on a $1,584,000 Note as a $1,584,000 money deposit for itself, that would constitute a financial gain (not loss) to the Bank.

In that case,   the Bank ought to repay the Plaintiffs $1,584,000.

### b.   *The Signature is Null and Void*
A person is not liable on an instrument unless the person signed the instrument. "Signed" includes any symbol executed or adopted *with present intention to adopt or accept a writing*. A forgery does not only mean the signature was forged, it may also mean the document was altered. When the document signed is then altered, the signature becomes null and void. The forged document may have handwriting or a name at the bottom, but the signature is not lending validity to the authenticity of the document because it was altered.

The Bank did alter the terms of the Note. The Bank stamped the note to have the note act as money to fund the loan. That stamp and deposit (exchange) fundamentally altered the document, along with the cost and risk of the loan, and did the opposite of what the borrowers' signature had endorsed. The Bank knew that it would not loan one cent of other depositors' money or legal tender to obtain the $1,584,000 Note.

The question is, was the promissory note with the borrower's signature validating a document which agreed only to the repayment of the loan by the borrower, or did the borrower agree to loan himself his own money and then repay the Bank as if the Bank had loaned him other depositors' money?

Whoever signed the contract cannot be liable under its terms due to the Bank's fraud, alteration, and lack of full disclosure. The Bank significantly changed the cost and the risk of the written agreement. The agreement was altered and forged. The signatures are null and void.

When there is fraud involved, then any action that flows from that fraud is null and void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio,* out of fraud no action arises.

### c.      The Credit River Ruling

In the 1968 Credit River Decision (*First National Bank of Montgomery v. Jerome Daly*), the president of the Bank admitted that the bank created the money and credit upon its own books by which it acquired or gave as consideration for the Note; that this was standard banking practice, that the credit first came into existence when they created it; that he knew of no United States Statutes which gave them the right to do this.

In Credit River, the Court ruled:

A lawful consideration must exist and tendered to support the Note. See Ansheuser-Busch Brewing Company v. Emma Mason, 44 Minn. 318, 46 N.W. 558. The Jury found that there was no consideration and I agree. Only God can create something of value out of nothing.

Even if Defendant could be charged with waiver or estoppel as a matter of Law, this is no defense to the Plaintiff. The Law leaves wrongdoers where it finds them. See sections 50, 51 and 52 of Am Jur 2nd "Actions" on page 584 – "no action will lie to recover on a claim based upon, or in any manner depending upon, a fraudulent, illegal, or immoral transaction or contract to which Plaintiff was a party.

Plaintiff's act of creating credit is not authorized by the Constitution and Laws of the United States, is unconstitutional and void, and is not a lawful consideration in the eyes of the Law to support anything or upon which any lawful right can be built.

Judge MARTIN V. MAHONEY noted that  "a Note given on a Consideration which is prohibited by law is void . . . The emission of Bills of Credit upon the books of these private Corporations for the purpose of private gain is not warranted by the Constitution of the United States and is unlawful. See Craig v. Mo. 4 Peters Reports 912."

In summary, nothing in the law gave the Banks the right to create money on their books.

### d.      The Debt is Disputed

Defendants had failed to validate the debt or respond to meaningful communication from Plaintiffs (Exhibit 1).

If a debt cannot be validated by a creditor, it is unenforceable and the creditor must cease and desist all collection activities pursuant to Title 15, § 1692(g). A notice by the debtor that the debt is being disputed is all that is needed to compel the creditor to stop collecting the debt until debt validation has been completed. See <u>Clarks Jeweler's v. Humble</u>, 823 P 2d 818, 16 Kan App 2d 366 (1991).

Plaintiffs did dispute the debt (Exhibit 1).

As a result, no foreclosure sale should take place because no validation has been completed.


**<u>EIGTH CAUSE OF ACTION:</u>        QUIET TITLE TO 3964 E. Expedition Way,  Phoenix, Arizona 85050.**

Plaintiffs reallege the previous paragraphs of this Complaint and incorporate the same by reference as if fully copied and restated herein below.

Plaintiffs now sue for quiet title to 3964 E. Expedition Way,  Phoenix, Arizona 85050 pursuant to A.R.S. §12-1101, et al.

Plaintiffs assert this claim to establish their title to against the adverse claims of Defendants and all Jane and John Does that may or may not have a supposed interest in the title to the Plaintiffs' marital estate.

Plaintiffs define Jane and John Does as anyone who may have any supposed interest in Title.

Plaintiffs believe that, given the current state of this economy (which is rife with fraud) that there could be other fraudulent parties, outside of Defendants that may assert ownership.

Plaintiffs, though wary of fraud, welcome the appearance of the true Original Note Holder.

Jurisdiction and Venue are proper because the Property in question, for which quiet title is sought, is located within the County of Maricopa.

Plaintiffs have filed a *lis pendens* as required by law with the County Clerk.

Plaintiffs identify the principal property as 3964 E. Expedition Way,  Phoenix, Arizona 85050, as being legally described as:

**Lot 272, VILLAGE 3 AT AVIANO, according to Book 653 of Maps, Page 6, records of Maricopa County, Arizona.**

Plaintiffs ask and pray for relief that this Court to grant quiet title to the Plaintiffs, because CHASE's encumbrance on the subject property entirely depends on a contract with the Plaintiffs and WAMU, which was either void *ab initio* or voidable for the simple reasons that (a) WAMU undertook not to assume and accept any detriment to itself or any entity under its control.  There

was accordingly no mutuality of consideration.

Even if WAMU was a bona fide contracting party on origination, WAMU has been liquidated and ceased to have any privity of contract with the Plaintiffs, or their successors in interest whatsoever.

Plaintiffs reserve the right to amend this Complaint for Quiet Title.

Plaintiffs pray that the Court will hold a hearing to examine into and determine Plaintiffs' Claims against all of the Defendants, and that upon Final Trial-by-Jury, that the Court will award Plaintiffs quiet title to their property, the subject of this lawsuit, ordering that all encumbrances and liens, be ordered stricken and removed from the public property records of Arizona, or else expunged and marked as VOID if otherwise required to remain in the public property records of each relevant county.

Plaintiffs pray for Quiet Title to 3964 E. Expedition Way, Phoenix, Arizona 85050 as against all Defendants.

Plaintiffs are credibly informed and believe that the Defendants who are attempting to foreclose -- STA, CHASE, or CRC -- are making, in their foreclosure conduct and action, claims adverse to Plaintiffs.

Plaintiffs pray for establishment of plaintiff's estate and that Defendants be barred and forever estopped from having or claiming any right or title to the premises adverse to Plaintiffs.

## TRIAL-BY-JURY

Plaintiffs demand a trial-by-jury of all issues of fact so triable, and all mixed questions of law and fact which may be triable as a matter of controlling case law.

Plaintiffs demand an advisory jury on all other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from the deciding issues presented to the jury for resolution.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against all defendants for the relief requested above, including but not limited to declaratory judgment regarding the rights and status of each party in relation to the property at 3964 E. Expedition Way,  Phoenix, Arizona 85050.

Plaintiffs cannot be deprived of their property without due process of law.

Plaintiffs have the right to make and enforce contracts, to terminate contracts, to refuse to pay any person who cannot prove to be in legal and equitable privity of contract with an original contracting party -- that is, a "holder in due course" of a contractual obligation such as a promissory note or other right to receive payments.

In Plaintiffs' estimation and based on the available evidence, not a single Defendant has the right

to foreclose.

By assuming the truth of Plaintiffs' allegations, Plaintiffs are entitled to relief under the facts presented.

It is evident that Defendants do not have any rights whatsoever against Plaintiffs.

**WHEREFORE,** Plaintiffs move and request that this Court declare and adjudge that all Defendants do not have, and never had, any legal right, title, or any equitable or beneficial interest in the enforcement of the Plaintiffs' Note, and should be temporarily and permanently enjoined from proceeding against 3964 E. Expedition Way, Phoenix, Arizona 85050.

**WHEREFORE,** Plaintiffs George M. and Diane W. Walker move this Honorable Court to suspend the attempted sale of the property currently scheduled for April 1, 2011, to declare the mortgage a nullity, to zero out the promissory note (if it exists, and particularly if a mortgage insurer paid it off), to grant plaintiffs a quiet title, to order the release of any lien that may exist, and to order the Defendants to clean up the credit report from any negative entries caused by them.

Furthermore, Plaintiffs move this Honorable Court to

Order Defendants to pay treble damages to Plaintiff for conducting practices alleged herein, pursuant to A.R.S.§13-2314.

Plaintiffs request this Court find Defendants liable to pay all costs of Court which Plaintiffs have incurred or will become obligated to pay as a result of the instigation, filing, and prosecution of this lawsuit.

Plaintiffs request this Court find Defendants CHASE and STA liable for general damages in the amount of $250,000 for extended emotional stress and incalculable harm to Plaintiffs due to their unlawful foreclosure attempt.

Plaintiffs request this Court find every Defendant attempting to foreclose liable for punitive damages for failing to make a "reasonable inquiry" pursuant to Ariz. R. Civ. P. 11 on their claim that they have a right to foreclose and to hold Trustee's sale.

Order any other and further relief as the Court may deem just and proper.

We verify that the arguments made herein are true and correct to the best of our knowledge.

Respectfully Submitted,

_George M. Walker_

George M. Walker

Date: _3/29/2011_

STATE OF ARIZONA
COUNTY OF MARICOPA
This instrument was acknowledged before me
This _9_ day of _MARCH_, 20 _11_
In witness whereof I herewith set my hand
and official seal.

_____NOTARY PUBLIC

**NOTARY**



BEAU BURKHOLDER
Notary Public - Arizona
Maricopa County
My Comm. Expires Apr 8, 2011

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and exact copy of the above has been furnished by U.S. Mail on this _____ day of March, 2011 to the following:

Washington Mutual Bank, F.A.
2273 N. Green Valley parkway
Suite 14
Henderson, NV 89014

JP MORGAN CHASE BANK N.A.
AKA CHASE HOME FINANCE
7301 Baymeadows Way
Jacksonville, FL 32256

CALIFORNIA RECONVEYANCE COMPANY
9301 Corbin Ave
Northridge, CA 91324

SECURITY TITLE AGENCY
8800 E. Raintree Dr. Suite 120
Scotsdale, AZ 85260

George M. Walker

Exhibit "1"

George M & Diane Walker
3964 E Expedition Way
Phoenix, Arizona 85050

California Reconveyance Company
9200 Oakdale Ave
Chatsworth, CA 91313

Chase Home Finance
6716 Grade Ln Bldg Ste 910
Louisville, KY 40213

2/28/2011

Re: Your Notice of Trustee Sale, dated 29 November 2010

TS No.: 136389AZ
Loan Number: 3011206566

To Whom It May Concern:

This letter is being sent to you in response to a Notice of Trustee Sale sent to me dated 29 November 2010, received by me on or about December 13 2010. Please be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is disputed and validation is requested.

This letter is to also inform you of my intentions to file a formal Federal Complaint (law suit) within the next 24 hours naming all concern parties. Attached, are the formal written request to the servicer(s) demanding validation of the debt. To this date they have not responded to none of my written request or demands, as obligated by both Federal and State laws.

As a result of their failure to comply with the Qualified Written Request, Notice of Default and Notice of Right To Cancel, I hereby, request that the sale of my home, referenced above, dated March 1, 2011, 12:30pm be postponed pending litigation which is imminent.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section. I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

Please provide me with the following:

1. What the money you say I owe is for;
2. Explain and show me how you calculated what you say I owe;
3. Provide me with copies of any papers that show I agreed to pay you what you say I owe;
4. Provide a verification or copy of any judgment if applicable;
5. Identify the original creditor;
6. Prove the Statute of Limitations has not expired on this account;

7. Show me that you are licensed to collect in my state;

8. Provide me with your license numbers and Registered Agent;

9. Signed agreement from the debtor confirming to pay the debt;

10. The agreement which authorizes you to collect debt on the assumed debt.

11. Complete payment history, the requirement of which has been established via Spears v. Brennan 745 N.E.2d: 2001 Ind. App. LEXIS 509 and

12. Agreement that bears the signature of the alleged debtor wherein he agreed to pay the original creditor.

13. Letter of sale or assignment from the original creditor to your company. (Agreement with your client that grants you the authority to collect on this alleged debt.) Coppola v. Arrow Financial Services, 302cv577, 2002 WL 32173704 (D.Conn.)

Pursuant to the Fair Debt Collection Practices Act (FDCPA), I am also requesting, in writing that no telephone contact be made by your offices to my home, to my place of employment or any other person(s) regarding such debt. Any attempts by your office and/or your client for telephone communications with me, including but not limited to computer generated calls, any electronic device type of contact, and calls or correspondence sent to or with any third parties, it will be considered harassment under the FDCPA. Let it be known that all future communications with me MUST be done so in writing and sent to the address noted in this letter by USPS. Any other type of communication received other than in writing will be recorded (Ariz. Rev. Stat. Ann. § 13-3005) and used for legal purposes pursuant to FDCPA and standards.

This is an attempt to correct your records and/or your client's records as well as to inform you and/or your client of my intent under the FDCPA, Ariz. Rev. Stat. Ann. §§ 32-1001 to 1057, any information obtained shall be used for that purpose.

These letters were sent Certified Registered Return Receipt via USPS.

Best Regards,

George M Walker                     Date: 2/28/2011

Diane W Walker                      Date 2/28/2011

Date: _____July 1_____, 2010

To:   Chief Financial Officer
WASHINGTON MUTUAL BANK N.A,
2273 N. GREENVALLY PKWY STE 14
HENDERSON NV 89011

CHASE HOME FINANCE
6716 GRADE LN BLDG 9, STE 910
LOUISVILLE, KY 40213

**NOTICE:**

**WARNING!** Exigent conditions are contained in the attached document that renders the matter contained therein as COMMERCIALLY URGENT. Please read carefully.

It is recognized that <u>**you may be busy at the moment**</u>, and you may not have time to respond immediately. If you feel you have competent grounds for doing so, you may ask for additional time to respond to the attached notice by faxing a request to the number below. No reasonable request for additional time for responding will be denied. If you do not ask for more time, then you must respond by giving your evidentiary reasons as to why this process should not continue to issue forth.

<u>**Your reasons must be substantial**</u> to impede the process proposed. A simple showing or claiming of possession of either the Promissory Note or its accompanying Security Instrument (Deed of Trust/Mortgage Note) will not be considered as grounds for either stopping or impeding this urgently required process. You are required to give evidence and reasons above these aforementioned items.

It is also recognized that you may not be the proper party to whom this Notice should be addressed. In the event that this is the case, you are hereby authorized to forward this Notice to the proper party, and to request an extension of not greater than five (5) business days to get these documents to such party.

Failure to do either of these things will result in the procedures commenced in the attached documents being carried out in full.

<u>**This is a declaration of commercially urgent conditions involving suspected breaches of contracts between parties.**</u> This is an attempt to begin a procedure to correct those breaches. Please be advised of that, and conduct yourself accordingly.

Sincerely,

*George M. Null*

George Maurice Walker

Fax #: 480-422-1325

# AFFIDAVIT

### 3964 E EXPEDITION WAY
### PHOENIX, ARIZONA

STATE OF ARIZONA     )
COUNTY OF MARICOPA    ) *ss.*

I, George Maurice Walker, hereafter Affiant, being of sound mind, competent and able to testify to the accuracy of this Affidavit, hereby confirms that all the facts stated and affirmed herein are true, correct, complete, and not misleading, admissible as evidence, and if testifying shall so state under the penalty of perjury:

1. That, Affiant makes this Affidavit based on first hand knowledge of all the facts stated herein, including the research of federal and state laws and public policy documents that govern monetary instruments related to banking and financial institutions.

2. That, Affiant and his spouse, Diane W Walker did sign alleged loan documents with WASHINGTON MUTUAL BANK N.A, at SECURITY TITLE AGENCY office in SCOTTSDALE, ARIZONA on October 9, 2006 concerning property located at 3964 E EXPEDITION WAY, PHOENIX, ARIZONA.

3. That, Affiant and Affiant's spouse, Diane W Walker, did sign a promissory note and issued to WASHINGTON MUTUAL BANK N.A, for processing on October 9, 2006; the promissory note was for the sum of $1,440,000.

4. That, Affiant was rushed by WASHINGTON MUTUAL BANK N.A, representatives to sign other alleged closing documents and was not provided time to review or provided a clear understanding of the terms and conditions of these documents that he was requested to sign.

5. That, since the above events and the exposure of this nation's mortgage default crisis, Affiant has recently learned that there has been possible fraud committed against him by WASHINGTON MUTUAL BANK N.A, representatives in withholding FULL DISCLOSURE at the signing of closing documents and that it appears fraud in the factum has been committed against him regarding his signing the mortgage note and Deed of Trust.

6. That, Affiant confirms and re-affirms his lawful and timely dispute and demands full compliance in providing FULL DISCLOSURE to all requested questions and provide all request for documentation per the LAWFUL DEBT VALIDATION DEMAND annexed hereto and made a part hereof.

7. That, WASHINGTON MUTUAL BANK N.A, registered agent and CHASE HOME FINANCE acting as servicer are being served this Affidavit and LAWFUL DEBT VALIDATION DEMAND.

I hereby state that the above is true to the best of my knowledge and understanding.

Date: _7-1_____, 2010          BY: _____

GEORGE MAURICE WALKER
3964 E EXPEDITION WAY
PHOENIX, ARIZONA 85050
TEL: (480) 227-3100


State of ARIZONA                    )
                                    )
County of _Maricopa_____      )

Subscribed and sworn to (or affirmed) before me on this _1st_ day of

_July_____, 2010 by _George Maurice Walker_____, proved

to me on the basis of satisfactory evidence to be the person(s) who appeared before me.


_____                    (Seal)
Signature of Notary Public

TROY RILEY
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
November 11, 2012

# CERTIFICATE OF MAILING

I, George Maurice Walker do hereby solemnly declare, that on _July 1, 2010_,
2010, I did cause to be delivered by Federal Express private courier and/or first class Certified
US Mail, a true and correct copy of the CONSTRUCTIVE LEGAL NOTICE OF LAWFUL
DEBT VALIDATION DEMAND, including true and correct copies of all/any documents
referenced therein as "attached hereto", to the parties and locations listed below:


Date: _7-2_____, 2010                    _George M. Walker_

                                              George Maurice Walker


**WASHINGTON MUTUAL BANK N.A,**
**2273 N. GREENVALLY PKWY STE 14**
**HENDERSON NV 89011**
**US Certified Mail Tracking No.** _7009 3410 0000 8862 6158_


**CHASE HOME FINANCE**
**6716 GRADE LN BLDG 9, STE 910**
**LOUISVILLE, KY 40213**
**US Certified Mail Tracking No.** _7009 3410 0000 8862 6165_

GEORGE MAURICE WALKER
3964 E Expedition Way
Phoenix, Arizona 85050

DATE: _July  3_____, 2010

Loan #3011206566-203/3011206566
APN #212-38-334
Legal Description: See Attached Exhibit A

---

### QUALIFIED WRITTEN REQUEST
### TRUTH IN LENDING ACT DEMAND
### DEBT VALIDATION DEMAND

**Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605(e);**
Regulation X at 24 C.F.R. § 3500 et seq.
**Truth-In-Lending-Act (TILA) § 1604(e), 15 U.S.C. §§ 1601 et seq. (1968) and 1692 et seq.**
**Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692c**

---

**GRANTOR(S): GEORGE MAURICE WALKER and DIANE W WALKER**
            3964 E Expedition Way
            Phoenix, Arizona 85050

**GRANTEE(S): WASHINGTON MUTUAL BANK N.A,**
            2273 N. GREENVALLY PKWY STE 14
            HENDERSON NV 89011
            USPS Certified Mail # 7009 3410 0000 8862 6158

            CHASE HOME FINANCE / Servicer
            6716 GRADE LN BLDG 9, STE 910
            LOUISVILLE, KY 40213
            USPS Certified Mail # 7009 3410 0000 8862 6165

You are now in receipt of this NOTICE under the authority of the Truth-In-Lending-Act (TILA)
§ 1604(e), 15 U.S.C. §§ 1601 et seq. (1968) and 1692 et seq., and the Fair Debt Collection
Practices Act (FDCPA) 15 U.S.C. §1692c, and the Real Estate Settlement Procedures Act
(RESPA) 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500 regarding loan number
3011206566-203 / 3011206566. I dispute the alleged mortgage debt in its entirety for being
inaccurate and firmly believe that I have had fraud in the factum committed against me for lack
of full disclosure by the alleged Lender.

**NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT,
NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL.**

**THIS IS MY "QUALIFIED WRITTEN REQUEST": TILA REQUEST, RESPA REQUEST,
COMPLAINT OF PROBABLE FRAUD IN THE FACTUM, DISPUTE OF DEBT &
VALIDATION OF DEBT**

Reference:    Alleged Mortgage Loan # 3011206566-203 / 3011206566
              Private Land & Chattel Property located at
              3964 E EXPEDITION WAY
              PHOENIX, ARIZONA

Attention Authorized Representative for the Above Referenced Companies / Corporations:

After several consultation meetings with Legal Counsel and knowledgeable accountants regarding this matter, I am writing to formally complain about intentional accounting omissions and probable fraud in the factum that took place at the closing in the purchase of my home. I need a clear understanding and clarification (**FULL DISCLOSURE**) of the transactions that occurred at my signing of the initial documents, the funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

With our nation's mortgage default crisis and the mortgage scams that have occurred against millions of American families, I am most concerned that potential fraudulent and deceptive practices have been committed against me in the intentional omission of due consideration in the exchange of my promissory note, my signing of the mortgage note and security agreement; including deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks.

I hereby **DEMAND** absolute first-hand evidence from you and/or your legal department with regard to the original signed promissory note and an uncertificated or certificated security concerning account numbers 3011206566-203 / 3011206566. In the event you refuse or fail to supply me with these documents it will be positive confirmation on your part that WASHINGTON MUTUAL BANK N.A, never really created and owned a security. I also hereby **DEMAND** that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security, I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt, I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

**To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this QUALIFIED WRITTEN REQUEST, please refrain from reporting any negative credit information [if any] to any credit reporting agency until you respond to each of the requests.**

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. Upon receipt of your answers and production of documents, I will contract with my CPA to do another audit for a secondary validation. I **DEMAND** that you validate this debt so that it is accurate to the penny!

I firmly request that you do not rely on previous servicers or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account. I understand that potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully, and/or illegally:

◊       Increased the amounts of monthly payments.
◊       Increased the principal balance I owe;
◊       Increased escrow payments;

◊       Increased the amounts applied and attributed toward interest on this account;
◊       Decreased the proper amounts applied and attributed toward principal on this account;
◊       Assessed, charged and/or collected fees, expenses and misc. charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I **DEMAND** that you demonstrate that I have not been the victim of such predatory, fraudulent servicing or lending practices that have occurred throughout the nation.

To ensure this, I have authorized a thorough review, examination, accounting and audit of mortgage account # 3011206566-203 / 3011206566 by mortgage auditing and predatory servicing or lending experts. These exam and audit experts will review this mortgage account file from the date of initial contact with the mortgage provider, WASHINGTON MUTUAL BANK N.A,, their applications and the origination of this account to the present date.

Again this is a **Qualified Written Request** under the Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code. TAKE NOTICE that RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions & production of documents as requested in this letter within twenty [20] business days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed for me and my audit experts to insure that this loan:

1.  Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to TILA, FDCPA, RESPA, HOEPA and other laws;

2.  That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3.  That the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4.  That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc., were and still are properly disclosed to me;

5.  That each servicer and/or sub-servicers of this mortgage have serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust;

6.  That each servicer and sub-servicers of this mortgage have serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

7.  That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

8.  That interest and principal have been properly calculated and applied to this loan;

9.  That any principal balance has been properly calculated, amortized and accounted for; that no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account;

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account number or my name.

As such, please mail to me, at the address above, copies of the documents requested below as soon as possible. Please provide copies of:

10. Any certificated or uncertificated security, front and back, used for the funding of account # 3011206566-203.

11. Any and all "Pool Agreement(s)" including account # 3011206566-203 between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE account # 3011206566 and any government sponsored entity, hereinafter (GSE).

12. Any and all "Deposit Agreement(s)" regarding account # 3011206566-203 or the "Pool Agreement" including account # 3011206566-203 between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE account # 3011206566 and any GSE.

13. Any and all "Servicing Agreement(s)" between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

14. Any and all "Custodial Agreement(s)" between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

15. Any and all "Master Purchasing Agreement(s)" between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

16. Any and all "Issuer Agreement(s)" between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

17. Any and all "Commitment to Guarantee" agreement(s) between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

18. Any and all "Release of Document agreements" between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

19. Any and all "Master Agreement(s) for servicer's Principle and Interest Custodial Account(s)" between WASHINGTON MUTUAL BANK N.A, and any GSE.

20. Any and all "Servicers Escrow Custodial Account" between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

21. Any and all "Release of Interest" agreements between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE and any GSE.

22. Any Trustee agreement(s) between WASHINGTON MUTUAL BANK N.A, and CHASE HOME FINANCE trustee regarding account # 3011206566-203 and or # 3011206566 or pool accounts with any GSE.

23. Please send to the requester a copy of any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter.

24. Please send to the requester a copy of any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note.

25. Please send to the requester a copy of any and all document(s) establishing the date of any appointment of Trustee for this Mortgage/Deed of Trust **and** any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s).

26. Please send to the requester a copy of any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note.

27. Please send to the requester a copy of any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note.

28. Please send to the requester a copy of any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note.

29. Please send to the requester any documentation evidencing the Mortgage or Deed of trust is **not** a constructive trust or any other form of trust.

30. Please send to the requester a certified copy of the signed promissory note showing the front and back of the document.

31. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

32. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review this mortgage account may properly conduct their work.

33. All assignments, transfers, allonges, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.

34. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

35. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

36. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

37. All escrow analyses conducted on this account from the inception of this account until the date of this letter;

38. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statement(s) including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

39. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

40. All letters, statements and documents sent to me by your company;

41. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

42. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

43. All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to present date.

44. All electronic transfers, assignments, sales of the note/asset, mortgage, deed of trust or other security instrument.

45. All copies of my property inspection reports, appraisals, BPOs and reports done on the property.

46. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.

47. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

48. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

49. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account until the date of this RESPA request.

50. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the from the inception of this account until the date of this RESPA request.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions listed below.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

51. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that the experts can decipher the data provided. I demand a certified Transaction Chart (T Chart) showing the GAAP journal entries made at the inception.

52. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company or party that designed and sold the system.

53. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS & CREDITS

54. Pursuant to banking law 12 USCA § 1813, please provide me the deposit slip for the alleged borrower's promissory note(s) that were issued to WASHINGTON MUTUAL BANK N.A, for processing through the Federal Reserve Bank in exchange for borrower's credit on October 9, 2006 and deposited on or around November 9, 2006.

55. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to this account as well as the date any credit was received.

56. Please provide the order authorizing the withdrawal of funds from the borrower's promissory note deposit account.

57. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.

58. For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

59. For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

60. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the parish/county property records in the parish/county and state in which my land and chattel property is located from the inception of this account to the present date? Yes or No?

61. If not, why?

62. Is your company the servicers of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

63. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

64. If yes, please detail for me the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

65. For purposes of my questions below dealing with attorney fees, please consider the terms attorney fees and legal fees to be one in the same.

66. Have attorney fees ever been assessed to this account from the inception of this account to the present date?

67. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessment to this account?

68. Have attorney fees ever been charged to this account from the inception of this account to the present date?

69. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account?

70. Have attorney fees ever been collected from this account from the inception of this account to the present date?

71. If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account?

72. Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date?

73. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment, charge or collection of attorney fees.

74.    Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

75.    Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

76.    Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

77.    Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment(s) were made and the reasons for such adjustment(s).

78.    Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

79.    Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

80.    How much in total attorney fees have been assessed to this account from the inception of this account until present date? $_____

81.    How much in total attorney fees have been collected on this account from the inception of this account until present date? $_____

82.    How much in total attorney fees have been charged to this account from the inception of this account until present date? $_____

83.    Please send to me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one and the same.

84.    Have there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

85.    If yes, please explain the reason for each and every suspense transaction that occurred on this account? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

86.    In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that have occurred on this account from the inception of this account until present date.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

87.    Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

88.    Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

89.    Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

90.   Are late fees considered interest? Yes or No?

91.   Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

92.   Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

93.   If yes, please describe what expenses or charges were charged or assessed to this account.

94.   Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

95.   Please describe for me in writing what damages you or others undertook due to any payment I made which was late.

96.   Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment or collection of late fees.

97.   Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to present date.

98.   Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to present date.

99.   Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

100.  Has interest been charged on any late fee assessed or charged to this account? Yes or No?

101.  Is interest allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

102.  Have any late charges been assessed to this account? Yes or No?

103.  If yes, how much in total late charges have been assessed to this account from the inception of this account until present date? $_____

104.  Please provide me with the exact months or payment dates you or other previous servicers of this account claim I have been late with a payment from the inception of this account to the present date.

105.  Have late charges been collected on this account from the inception of this account until present date? Yes or No?

106.  If yes, how much in total late charges have been collected on this account from the inception of this account until present date? $_____

## LAND & CHATTEL PROPERTY INSPECTIONS

107.  For purposes of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

108.  Have any property inspections been conducted on my land and chattel property from the inception of this account until the present date?

109. If your answer is no, you can skip the rest of these questions in this section concerning property inspections.

110. If yes, please tell me the date of each property inspection conducted on my land & chattel property that is the secured interest for this mortgage, deed or note?

111. Please tell me the price charged for each property inspection.

112. Please tell me the date of each property inspection.

113. Please tell me the name and address of each company and person who conducted each property inspection on my land & chattel property.

114. Please tell me why property inspections were conducted on my property.

115. Please tell me how property inspections are beneficial to me.

116. Please tell me how property inspections are protective of my land & chattel property.

117. Please explain to me your policy on property inspections.

118. Do you consider the payment of inspection fees as a cost of collection? Yes or No?

119. If yes, why?

120. Do you use property inspections to collect debts? Yes or No?

121. Have you used any portion of the property inspection process on my land & chattel property to collect a debt or inform me of a debt, payment or obligation I owe?

122. If yes, please answer when and why?

123. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees?

124. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

125. If yes, why?

126. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

127. If yes, why?

128. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

129. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

130. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

131. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

132. Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

133. If yes, when and how much was charged?

134. Is interest allowed to be assessed or charged on inspection fees or assessed to this account? Yes or No?

135. How much in total inspection fees have been assessed to this account from the inception of this account until present date? $_____

136. How much in total inspection fees have been collected on this account from the inception of this account until present date? $_____

137. Please forward to me copies of all property inspections made on my property in this mortgage account file.

138. Has any fee charged or assessed for property inspections been placed into escrow account? Yes or no?

**BPO FEES**

139. Have any BPOs [Broker Price Opinions] been conducted on my land & chattel property?

140. If yes, please tell me the date of each BPO conducted on my land & chattel property that is the secured interest for this mortgage, deed or note?

141. Please tell me the price of each BPO.

142. Please tell me who conducted each BPO.

143. Please tell me why BPOs were conducted on my land & chattel property.

144. Please tell me how BPOs are beneficial to me.

145. Please tell me how BPOs are protective of my land & chattel property.

146. Please explain to me your policy on BPOs.

147. Have any BPO fees been assessed to this account? Yes or No?

148. If yes, how much in total BPO fees have been assessed to this account? $_____

149. Have any BPO fees been charged to this account? Yes or No?

150. If yes, how much in total BPO fees have been charged to this account? $_____

151. Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from me.

152. Please send to me copies of all BPO reports that have been done on my land & chattel property.

153. Has any fee charged or assessed for a BPO been placed into escrow? Yes or no?

**FORCED-PLACED INSURANCE**

154. Have you placed or ordered any forced-placed insurance polices on my land & chattel property?

155. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed or note.

156. Please tell me the price of each policy.

157. Please tell me the agent for each policy.

158. Please tell me why each policy was placed on my land & chattel property.

159. Please tell me how the policies are beneficial to me.

160. Please tell me how policies are protective of my land & chattel property.

161. Please explain to me your policy on forced-placed insurance.

162. Have any forced-placed insurance fees been assessed to this mortgage or escrow account? Yes or No?

163. If yes, how much in total forced-placed policy fees have been assessed to this account? $_____

164. Have any forced-placed insurance fees been charged to this mortgage or escrow account? Yes or No?

165. If yes, how much in total forced-placed insurance fees have been charged to this mortgage or escrow account? $_____

166. Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect forced-placed insurance fees from me.

167. Do you have any relationship with the agent or agency that placed any policies on my land and chattel property? If yes, please describe.

168. Do you have any relationship with the carrier that issued any policies on my land & chattel property? If yes, please describe.

169. Has the agency or carrier you used to place a forced-placed insurance policy on my land & chattel property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

170. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? If yes, please send me a copy of each such policy.

171. Please send to me copies of all forced-placed insurance policies that have been ordered on my land & chattel property.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below:

172. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

173. Did the originator of this account or previous servicers of this account have a warehouse account agreement or contract with your company?

174. Did the originator of this account or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

175. Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected?

176. Where is the original monetary instrument (*promissory note*) or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

177. Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

178. Since the inception of this loan, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment.

179. Since the inception of this loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment.

180. Since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale.

181. Since the inception of this loan, have any sub-servicers serviced any portion of this mortgage loan? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that have sub-serviced this mortgage loan.

182. Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

183. Has each and every assignment of my asset/monetary instrument been recorded in the parish/county land records where the property associated with this mortgage account is located?

184. Has there been any electronic assignment of this mortgage with MERS [Mortgage Electronic Registration System] or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned the mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

185. Have there been any investors [as defined in your industry] who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this mortgage to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust involved.

186. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

187. Please provide me with copies of all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

188. How much was paid for this individual mortgage account by you?

189. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan.

190. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

191. Who did you issue a check or payment to for this mortgage loan?

192. Please provide me copies with the front and back of canceled check.

Under the Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code it is mandatory that you provide me full disclosure of the alleged debt that is said to be owed before proceeding any further with your collection action from twenty (20) days of receipt of this QUALIFIED WRITTEN REQUEST. If you do not provide all answers and production of documents requested in this Notice, you will be in fault, admitting no lawful claim and a default will be in order. Your admission of no lawful claim will be the basis for our Right to Cancel. A Notice of Right to Cancel will be issued twenty (20) days from the date of receipt of this CONSTRUCTIVE LEGAL NOTICE.

**From**:
Mail all correspondence to:
George Maurice Walker
Diane W Walker
3964 E Expedition Way
Phoenix, Arizona 85050

**To**:
**WASHINGTON MUTUAL BANK N.A,**
2273 N. GREENVALLY PKWY STE 14
HENDERSON NV 89011
CERTIFIED MAIL # 7009 3410 0000 8862 6080

CHASE HOME FINANCE
6716 GRADE LN BLDG 9, STE 910
LOUISVILLE, KY 40213
CERTIFIED MAIL # 7009 3410 0000 8862 6073

**Date:** August 2nd , 2010

**RE:** Deed of Trust Record: #20061344642- Record Date October 11, 2006; APN: 212-38-334;
Original Loan #3011206566-203

## NOTICE OF DEFAULT

**To: All parties addressed above**

**TRUSTOR(S)/GRANTOR(S):** George Maurice Walker and Diane W Walker do hereby give
Notice that the above listed parties have failed to provide Full Disclosure of the Mortgage Loan
Process noted above, as required by law and as requested in the QUALIFIED WRITTEN
REQUEST/TRUTH LENDING ACT DEMAND/DEBT VALIDATION DEMAND
dated July 2nd , 2010 and received by the above named parties on
July 6th , 2010. TRUSTEES/GRANTEES were provided 24 calendar days
under Federal Law to respond/answer to QUALIFIED WRITTEN REQUEST/TRUTH
LENDING ACT DEMAND/DEBT VALIDATION DEMAND which fully addressed the issue
of full disclosure of the entire alleged loan mortgage/deed of trust process, yet failed to respond
in the time specified. They have had since October 9, 2006 to provide full disclosure of the
Mortgage Loan Process as required under Federal Law. They have failed to comply.

## LET IT BE KNOWN

All the above named "Trustee, Successor Trustee(s), Beneficiary(s)", or Assigns, Substitutes,
known or unknown are hereby in DEFAULT for their failure to provide FULL DISCLOSURE to
George Maurice Walker and Diane W Walker.

## ACTUAL AND CONSTRUCTIVE NOTICE

All Trustee(s), Successor Trustee(s), and Beneficiary(ies) named in Deed of Trust by Trustor(s) dated October 9, 2006, and recorded October 11, 2006 under Deed of Trust Instrument No. 20061344642 are, hereby removed/released/dismissed of all duties, expressed or implied, effective immediately. The aforesaid Trustee(s), Successor Trustee(s), and Beneficiary(s) are expressly directed to **CEASE and DESIST** any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number.  Any continued actions of any nature against the property described above may result in legal actions being taken.

_____          _____
George Maurice Walker                               Diane W Walker


State of ARIZONA                         )
                                         ) ss
County of _Maricopa_____             )


**Subscribed and sworn to** (or affirmed) before me on this _2nd_ day of _August 2010_ ,

2010, by _George M. Walker_____ , proved to me on the basis of satisfactory

evidence to be the person(s) who appeared before me.


_____
Notary

LEAH A. SCHULTZ
Notary Public - Arizona
Maricopa County
My Commission Expires
January 5, 2014

# CERTIFICATE OF MAILING

I, George Maurice Walker do hereby solemnly declare, that on

_August 2nd_, 2010, I did cause to be delivered by Federal Express

private courier and/or first class Certified US Mail, a true and correct copy of NOTICE

OF DEFAULT, including true and correct copies of all/any documents referenced therein

as "attached hereto", to the parties and locations listed below:


Date: _August 2nd_, 2010           _George M. Walker_

                                    George Maurice Walker


**WASHINGTON MUTUAL BANK**
**2273 N. GREENVALLY PKWY STE 14**
**HENDERSON NV 89011**
**US Certified Mail Tracking No.** _7009 3410 0000 8862 6080_


**CHASE HOME FINANCE**
**6716 GRADE LN BLDG 9, SUITE 910**
**LOUISVILLE, KY 40213**
**US Certified Mail Tracking No.** _7009 3410 0000 8862 6073_

**From:**
Mail all correspondence to:
George Maurice Walker
Diane W Walker
3964 E Expedition Way
Phoenix, Arizona 85050

**To:**
**WASHINGTON MUTUAL BANK N.A,**
2273 N. GREENVALLY PKWY STE 14
HENDERSON NV 89011
CERTIFIED MAIL # 7006 2150 0002 3598 1984

CHASE HOME FINANCE
6716 GRADE LN BLDG 9, STE 910
LOUISVILLE, KY 40213
CERTIFIED MAIL # 7006 2150 0002 3598 1977

## NOTICE OF RIGHT TO CANCEL

You received a Qualified Written Request from me on July 6, 2006. Appropriate response addressing my concerns and questions has not been received as of this date. Non response/deficient response is a violation of the Truth and Lending Act.

Pursuant to Reg. Z §§ 226.15(a)(2), 226.23(a)(2), Official Staff Commentary § 226.23(a)(2)-1)

and 15 U.S.C. § 1635(b).

The FRB Model Notice simply says: "I WISH TO CANCEL," followed by a signature and date line (Arnold v. W.D.L. Invs., Inc., 703 F.2d 848, 850 (5th cir. 1983) (clear intention of TILA and Reg. Z is to make sure that the creditor gets notice of the consumer's intention to rescind)).

See Official Staff Commentary § 226.23(d)(2)-1. (See Willis v. Friedman, Clearinghouse No. 54,564 (Md. Ct. Spec. App. May 2,2002) (Once the right to rescind is exercised, the security interest in the Plaintiff's property becomes void ab initio). Thus, the security interest is void and of no legal effect irrespective of whether the creditor makes any affirmative response to the notice.

YOU ARE OFFICIALLY NOTICED THAT I WISH TO CANCEL AND ALL YOUR INTEREST IN THE PROPERTY TIED TO YOUR ACCOUNT # 3011206566 IS VOID AS A MATTER OF LAW AS OF TODAYS DATE. You are required to terminate all interest currently on the Public Record.

_George M. Walker_

Date _11/16/2010_

This document shall be recorded

**State of Arizona**
**County of Maricopa**

**BEFORE ME**, the undersigned Notary, _Tila Achoff_ _____ [name of Notary before whom affidavit is sworn], on this _29_ [day of month] day of _June_ [month], 20 _10_, personally appeared _George Walker_ _____ [name of affiant], known to me to be a credible person and of lawful age, who being by me first duly sworn, on _his_ [his or her] oath, deposes and says:

RE: Chase Home Finance/Washington Mutual – Alleged Loan No. 3011206566

The following documents were not given to or received by me doing my alleged mortgage closing at Security Title Agency located 10419 E McDowell Mtn. Ranch Rd Ste E-102 Scottsdale AZ 85255 on or about October 2, 2006.

Nor, doing any time after the alleged mortgage closing and up to this date have any of the noted documents below have been forwarded to me for my personal review and filing.

1. Promissory Note
2. Original Loan Application
3. HUD1 Settlement Sheet

[set forth affiant's statement of facts]

[signature of affiant]

George M. Walker
[ type name of affiant]

3964 E. Expedition Way
[address of affiant, line1]

Phoenix, Arizona 85050
[address of affiant, line 2]

Subscribed and sworn to before me, this _29_ [day of month] day of _June_ [month], 20 _10_.

[Notary Seal:]

[signature of Notary]

Tila Achoff
[typed name of Notary]

TILA M ACHOFF
Notary Public - Arizona
Maricopa County
My Comm. Expires Nov 5, 2013

NOTARY PUBLIC

My commission expires: _Nov 5_, 20 _13_.



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE — WASHINGTON DC 20552

7009 3410 0000 2988 6059

| Postage | $ | $1.90 | 0091 |
| Certified Fee | | $2.80 | 02 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $7.00 | 07/02/2010 |

Sent To OFF OF Housing
Street, Apt. No.; or PO Box No. 1700 G. St NW
City, State, ZIP+4 WASH DC 2055-

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE — HOUSTON TX 77010

7009 3410 0000 2988 6196

| Postage | $ | $1.90 | 0091 |
| Certified Fee | | $2.80 | 02 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $7.00 | 07/02/2010 |

Sent To US Dept of Treasury
Street, Apt. No.; or PO Box No. 1301 McKinney
City, State, ZIP+4 Houston TX 77010

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE — WASHINGTON DC 20580

7009 3410 0000 2988 6189

| Postage | $ | $1.90 | 0091 |
| Certified Fee | | $2.80 | 02 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | JUL -2 2010 |
| Total Postage & Fees | $ | $7.00 | 07/02/2010 |

Sent To FTC
Street, Apt. No.; or PO Box No. 600 Penn Ave NW
City, State, ZIP+4 WASH DC 20580

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE — LOUISVILLE KY 40213

7009 3410 0000 2988 6165

| Postage | $ | $1.90 | 0091 |
| Certified Fee | | $2.80 | 02 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | JUL -2 2010 |
| Total Postage & Fees | $ | $7.00 | 07/02/2010 |

Sent To Chase Bank
Street, Apt. No.; or PO Box No. 6716 Grade Ln
City, State, ZIP+4 Louisville KY 40213

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE — PHOENIX AZ 85007

7009 3410 0000 2988 6172

| Postage | $ | $1.90 | 0091 |
| Certified Fee | | $2.80 | 02 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | JUL -2 2010 |
| Total Postage & Fees | $ | $7.00 | 07/02/2010 |

Sent To Arizona AG
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE — HENDERSON NV 89011

7009 3410 0000 2988 6158

| Postage | $ | $1.90 | 0091 |
| Certified Fee | | $2.80 | 02 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | JUL -2 2010 |
| Total Postage & Fees | $ | $7.00 | 07/02/2010 |

Sent To Washing Mutual
Street, Apt. No.; or PO Box No. 273 N Greenwith
City, State, ZIP+4 Henderson NV 89011

PS Form 3800, August 2006          See Reverse for Instructions



**Notice of Right To Cancel**

# EXHIBIT "A"

LOT 272, VILLAGE 3 AT AVIANO, ACCORDING TO BOOK 653 OF MAPS, PAGE 6, RECORDS OF MARICOPA COUNTY, ARIZONA.

EXCEPT ALL OIL, GAS, OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, ARS.



Exhibit "2"

## SECURITY TITLE AGENCY

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

Maricopa Electronic Recording          20101036576
Recorder: Helen Purcell
Security Title Agency                   11/29/2010 02:05
141085911 Other Pgs:3

_____

Space above this line for recorder's use only

Title Order No. 14-85911 **Trustee Sale No. 136389AZ**  Loan No. 3011206566

## NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust Recorded 10-11-2006, Book N/A, Page N/A, Instrument 20061344642 in the records of MARICOPA, County, Arizona, at public auction to the highest bidder at AT THE MAIN ENTRANCE OF THE SUPERIOR COURT BUILDING, 201 WEST JEFFERSON, PHOENIX, AZ, on 03-01-2011 at 12:30 PM of said day.

Legal description: : SEE EXHIBIT "A"
Tax Parcel Number: 212-38-334
The Deed of Trust and/or Beneficiary provides the following purported property location:
  3964 E EXPEDITION WAY
  PHOENIX, AZ 85050

The original principal balance of the note is $1,440,000.00.  Trustee will accept only cash or cashier's check for reinstatement or price bid payment.  Reinstatement payment must be paid before 5:00 p.m. on the last day other than a Saturday or legal holiday before the date of sale.  The purchaser at the sale, other than the beneficiary to the extent of his credit bid, shall pay the price bid no later than 5:00 p.m. of the following day, other than a Saturday or legal holiday.

NAME AND ADDRESS OF ORIGINAL TRUSTOR: GEORGE M WALKER AND DIANE W WALKER, AS HUSBAND AND WIFE AS COMMUNITY PROPERTY  6339 E GREENWAY RD #102-132, SCOTTSDALE, AZ 85050

NAME AND ADDRESS OF PRESENT BENEFICIARY: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST TO WASHINGTON MUTUTAL BANK, FA, 7301 BAYMEADOWS WAY JACKSONVILLE, FL 32256

NAME AND ADDRESS OF CURRENT TRUSTEE: CALIFORNIA RECONVEYANCE COMPANY , 9200 Oakdale Avenue CA2-4379 Chatsworth, CA 91311, 800 892-6902



# EXHIBIT  "A"

LOT 272, VILLAGE 3 AT AVIANO, ACCORDING TO BOOK 653 OF MAPS, PAGE 6, RECORDS OF MARICOPA COUNTY, ARIZONA.

 EXCEPT ALL OIL, GAS, OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, ARS.



**PRIORITY**

*Independent Service with Impeccable Results*

AUCTIONS    HOLIDAY CALENDAR   |   LOGIN

**Quick Search**

TS#/Client Ref.: [_____]

Search

### AUCTIONS matching | TS#/Client Ref.: 136389AZ

| TS Number | Address | Estimated Debt | Opening Bid | Status | Auction Time | User Local Time |
|-----------|---------|---------------|-------------|--------|--------------|-----------------|
| **Friday, April 01, 2011** | | | | | | |
| 136389AZ | 3964 E EXPEDITION WAY, PHOENIX, AZ 85050 | $1,440,000.00 | . | Postponed to 4/1/2011 @ 12:30PM - MUTUAL AGREEMENT | 12:30 PM | 12:30 PM |

**Options**

advanced search